## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ROBERT ARAGON; DAVID ANTHONY SEGURA; ZACHARY FORT; RICHARD KENNEDY; ROSE'S GUNS & MORE, LLC, a limited liability company; SOUTHWEST GUNSMITH TECHNOLOGIES, LLC, a limited liability company; NEW MEXICO SHOOTING SPORTS ASSOCIATION, a nonprofit corporation; NATIONAL RIFLE ASSOCIATION OF AMERICA, a nonprofit corporation; SECOND AMENDMENT FOUNDATION, a nonprofit corporation; and FIREARMS POLICY COALITION, INC., a nonprofit corporation, <br><br> *Plaintiffs*, <br><br> v. <br><br> MICHELLE LUJAN GRISHAM, Governor of New Mexico, in her official capacity; NEW MEXICO DEPARTMENT OF HEALTH; and KATHYLEEN KUNKEL, Secretary for the New Mexico Department of Health, in her official capacity; J. Does 1–10, <br><br> *Defendants*. | Case No. <br> _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

Plaintiffs Robert Aragon; David Anthony Segura; Zachary Fort; Richard Kennedy; Rose's Guns & More, LLC; Southwest Gunsmith Technologies, LLC; New Mexico Shooting Sports Association; National Rifle Association of America; Second Amendment Foundation; and Firearms Policy Coalition, Inc., file this

complaint for declaratory and injunctive relief against Defendants Michelle Lujan Grisham, Governor of the State of New Mexico, in her official capacity; the New Mexico Department of Health; and Kathyleen Kunkel, Secretary for the New Mexico Department of Health, in her official capacity, and assert the following:

## INTRODUCTION

1.      New Mexico's government cannot suspend the Constitution and Americans' individual freedoms. The suspension and deprivation of natural and constitutionally protected rights and liberties by governmental fiat is unlawful.

2.      This lawsuit challenges Defendants' mandatory shuttering of lawful retail firearms businesses. By arbitrarily, capriciously—and unconstitutionally—targeting those who lawfully sell firearms and ammunition, New Mexico is depriving citizens of their natural and fundamental right to keep and bear arms.

3.      The circumstances posed by the COVID-19 Novel Coronavirus ("COVID-19") outbreak present challenges to all of us. During uncertain times—with the recognition that governments have no legal duty to protect the people they serve—there is no guarantee that law enforcement will respond to an individual's 911 call during this crisis or after it (let alone in time to prevent a crime) and those who choose to exercise their natural, fundamental, and individual Second and Fourteenth Amendment protected rights cannot be denied those rights.

4.      Uncertain times are precisely when fundamental rights—like the right to keep and bear arms for self-defense—must be protected. The challenges we all face because of COVID-19, or any other such emergency, do not, cannot, and must not justify or excuse government infringements upon natural and fundamental human rights.

5.      As New Mexico has recognized, safety and security are paramount, especially now, and New Mexico must respect Plaintiffs and Plaintiffs' members' natural and fundamental right to keep and bear arms in the same interest of safety and security.

## PARTIES

*Individual Plaintiffs*

6.      Plaintiff Robert Aragon is a natural person, a citizen of the United States, and a resident of the County of Torrance, New Mexico. Plaintiff Aragon is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Aragon is concerned about his safety and the safety of his family, wants to practice and exercise his right to keep and bear arms—including firearms, ammunition, magazines, and appurtenances—and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution, or civil liability, under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed

firearm and ammunition retailers and ranges. Plaintiff Aragon is a member of Firearms Policy Coalition, Inc.

7.     Plaintiff Zachary Fort is a natural person, a citizen of the United States, and a resident of the County of Bernalillo, New Mexico. Plaintiff Fort is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Fort is concerned about his safety and the safety of his family, wants to practice and exercise his right to keep and bear arms—including firearms, ammunition, magazines, and appurtenances—and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution, or civil liability, under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers and ranges. Plaintiff Fort is the President of the New Mexico Shooting Sports Association and is a member of the National Rifle Association of America, Firearms Policy Coalition, Inc., and the Second Amendment Foundation.

8.     Plaintiff David Anthony Segura is a natural person, a citizen of the United States, and a resident of the County of Bernalillo, New Mexico. Plaintiff Segura is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Segura is concerned about his safety and the safety of his family, wants to practice and exercise his right to keep and bear arms—including firearms, ammunition, magazines, and appurtenances—and would

do so, but for the reasonable and imminent fear of arrest and criminal prosecution, or civil liability, under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers and ranges. Plaintiff Segura is a licensed firearms instructor in the State of New Mexico (Instructor Number 556) and is a certified NRA pistol instructor and range safety officer. Plaintiff Segura teaches New Mexico Department of Public Safety certified firearms training courses that are required to receive a concealed handgun license. Plaintiff Segura brings this lawsuit in his individual capacity and on behalf of his customers and students. Plaintiff Segura is the Communications Officer for the New Mexico Shooting Sports Association and a member of the National Rifle Association of America.

9.     Plaintiff Richard Kennedy is a natural person, a citizen of the United States, and a resident of the County of Santa Fe, New Mexico. Plaintiff Kennedy is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Kennedy is the owner and operator of Plaintiff Southwest Gunsmith Technologies, LLC in Moriarty, New Mexico. Plaintiff Kennedy is concerned about his safety and the safety of his customers and the public. On behalf of himself and his customers, Plaintiff Kennedy would design, build, modify, renovate, and repair firearms, magazines, and appurtenances, but for the reasonable and imminent fear of criminal prosecution and loss of his business

licenses under Defendants' laws, policies, orders, practices, customs, and enforcement thereof. Plaintiff Kennedy is a member of Firearms Policy Coalition, Inc. and Second Amendment Foundation.

*Retailer Plaintiffs*

10.     Plaintiff Rose's Guns & More LLC ("Rose's Guns") is a limited liability company organized under the laws of the State of New Mexico that has its principle place of business in Moriarty (Torrance County), New Mexico. Plaintiff Rose's Guns is a retail dealer in firearms and ammunition that is licensed under both federal law and New Mexico law to engage in business as such. Plaintiff Rose's Guns wants to continue to engage in the lawful sale and transfer of firearms and ammunition and would do so but for the reasonable and imminent fear of arrest and criminal prosecution, civil liability, and/or loss of its business license under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers. Plaintiff Rose's Guns is a member of Firearms Policy Coalition, Inc.

11.     Plaintiff Southwest Gunsmith Technologies LLC ("Southwest Gunsmith") is a limited liability company organized under the laws of the State of New Mexico that has its principle place of business in Moriarty (Torrance County), New Mexico. Plaintiff Southwest Gunsmith is a retailer that designs, builds, modifies, renovates, and repairs firearms and is licensed under both federal law and

New Mexico law to engage in business as such. Plaintiff Southwest Gunsmith wants to continue to engage in the lawful designing, building, modifying, renovating, and repairing of firearms and would do so but for the reasonable and imminent fear of arrest and criminal prosecution, civil liability, and/or loss of its business license under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers. Plaintiff Southwest Gunsmith is a member of Firearms Policy Coalition, Inc. and Second Amendment Foundation.

*Institutional Plaintiffs*

12.     Plaintiff National Rifle Association of America ("NRA") is a nonprofit corporation, operating under § 501(c)(4) of the Internal Revenue Code. The NRA was incorporated in the state of New York in 1871, with principal offices and place of business in Fairfax, VA. In Accordance with Article II of the NRA's bylaws, the NRA's purposes and objectives include "To protect and defend the Constitution of the United States, especially with reference to the God-given inalienable right of the individual American citizen guaranteed by such Constitution to acquire, possess … transfer ownership of, and enjoy the right to use, keep and bear arms, in order that the people may exercise their individual rights of … defense of family, person, and property." The NRA's membership includes roughly 5,000,000 individuals, many of whom reside in New Mexico and are currently being harmed by Emergency Order

at issue in this lawsuit. The NRA has expended and diverted resources, and is adversely and directly harmed, because of Defendants' laws, policies, orders, practices, and customs challenged herein. The NRA brings this action on behalf of itself and its members.

13.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the Constitutional right to possess firearms, and the consequences of gun control. SAF has over 650,000 members and supporters nationwide, including thousands of members in New Mexico. SAF has expended and diverted resources, and is adversely and directly harmed, because of Defendants' laws, policies, orders, practices, and customs challenged herein. SAF brings this action on behalf of itself and its members. Individual Plaintiffs and Retailer Plaintiffs are members of SAF.

14.     Plaintiff New Mexico Shooting Sports Association ("NMSSA") is a 501(c)(4) nonprofit corporation incorporated in the State of New Mexico. Founded in 1935, NMSSA seeks to promote social welfare and public safety through firearms training and the shooting sports. Article II, Section 6 of the New Mexico Constitution guarantees New Mexicans the right to keep and bear arms in New

Mexico; NMSSA seeks to protect that right for its members and all New Mexico gun owners. NMSSA has expended and diverted resources, and is adversely and directly harmed, because of Defendants' laws, policies, orders, practices, and customs challenged herein. NMSSA brings this action on behalf of itself and its members.

15.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights—especially but not limited to First and Second Amendment rights—advancing individual liberty and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC has members in the State of New Mexico, including members in Defendants' respective jurisdictions and the Individual and Retailer Plaintiffs as identified herein. FPC represents its members and supporters—who include gun owners, individuals who wish to acquire firearms and ammunition, licensed New Mexico firearm retailers, shooting ranges, trainers and educators, and others—and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. FPC has expended and diverted resources, and is adversely

and directly harmed, because of Defendants' laws, policies, orders, practices, and customs challenged herein.

*Defendants*

16.     Defendant Michelle Lujan Grisham is the Governor of New Mexico. The office of the Governor is located at 490 Old Santa Fe Trail #400, Santa Fe, NM, 87501. Governor Grisham is sued in her official capacity.

17.     Defendant New Mexico Department of Health is an agency of the state of New Mexico, established by N.M. Stat. § 9-7-4 with authority granted to it by N.M. Stat. §§ 24-1-1, *et seq*. Its headquarters is located at the Harold Runnels Building, 1190 S. St. Francis Drive, Santa Fe, NM, 87505.

18.     Defendant Kathyleen Kunkel is the Secretary for the New Mexico Department of Health. The New Mexico Department of Health's headquarters is located at the Harold Runnels Building, 1190 S. St. Francis Drive, Santa Fe, NM, 87505. Secretary Kunkel is sued in her official capacity.

19.     The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as J. Does 1–10 are presently unknown to Plaintiffs and are therefore sued under these fictitious names. Plaintiffs will seek leave from the Court to amend this Complaint at the appropriate time to show the true names and capacities of these Defendants, if and when they have been ascertained.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over all claims for relief under 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988. This action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages by the State of New Mexico, of the rights, privileges or immunities secured by the United States Constitution.

21.    Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or occurred in this District in which the action is brought.

## STATEMENT OF FACTS

*Constitutional Background*

22.    The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

23.    The Second Amendment protects "a *pre-existing*," natural right to self-defense.  *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis in original).

24.    The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. It "elevates

above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id* at 635.

25.     The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

26.     By virtue of the Fourteenth Amendment, "the Second Amendment right is fully applicable to the States." *McDonald v. City of Chicago, Ill*., 561 U.S. 742, 750 (2010).

27.     The "core lawful purpose of" the Second Amendment is to ensure that the citizens are able to acquire and possess firearms for "self-defense" *Heller*, 554 U.S. at 630; *Peterson v. Martinez*, 707 F.3d 1197, 1218–19 (10th Cir. 2013) (collecting authorities); *Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them . . . and to purchase and provide ammunition suitable for such arms.").

28.     "Commercial regulations on the sale of firearms do not fall outside the Scope of the Second Amendment …. [P]rohibiting the commercial sale of firearms

… would be untenable under *Heller.*" *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010).

29.     Individuals have a right to keep and bear arms, including but not limited to, buying, selling, transferring, transporting, carrying, and practicing safety and proficiency with firearms, ammunition, magazines, and appurtenances, under the Second and Fourteenth Amendments to the United States Constitution.

30.     Licensed firearm and ammunition retailers and shooting ranges are necessary to individuals' lawful acquisition of firearms and ammunition, including but not limited to complying with federal and state background check requirements.

31.     The natural, fundamental, individual right to keep and bear loaded, operable firearms in the home includes the right to lawfully acquire firearms, ammunition, magazines, and appurtenances.

32.     Individuals have a right to buy, sell, transfer, and practice with arms, including but not limited to, firearms, ammunition, magazines, and required appurtenances. Firearm and ammunition retailers and shooting ranges are necessary to individuals' exercise of their rights.

*State and Federal Orders*

33.     Over the last several months COVID-19 has been identified as a pandemic causing various forms of illness. According to the Centers for Disease

Control and Prevention ("CDC"), "[t]he complete clinical picture with regard to COVID-19 is not fully known," but the CDC advises that "[a]ll U.S. states are reporting some community spread of COVID-19." The CDC further advises that the duration and severity of the pandemic in the United States remains uncertain.[1]

34.     On March 11, 2020, Governor Grisham invoked powers granted to her under the "All Hazard Emergency Management Act, NMSA 1978, §§ 12-10-1 through 12-10-10" and "NMSA 1978, 12-10A-5" and declared a State of Public Health Emergency. Executive Order 2020-004.[2]

35.     On April 6, 2020, Governor Grisham "renewed and extended" Executive Order 2020-004 through April 30, 2020. Executive Order 2020-022 (collectively, "Executive Orders").[3] Executive Order 2020-022 further states that "All other powers invoked, directives, and orders contained in Executive Order 2020-004 remain in effect."

---

[1] The information in this paragraph is available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html (last visited April 9, 2020).

[2] The Executive Order is available at https://www.governor.state.nm.us/wp-content/uploads/2020/03/Executive-Order-2020-004.pdf (last visited April 9, 2020).

[3] The Executive Order is available at https://www.governor.state.nm.us/wp-content/uploads/2020/04/EO_2020_022.pdf (last visited April 9, 2020).

36.      On April 6, 2020, Governor Grisham issued Executive Order 2020-021.[4] Executive Order 2020-021 commuted the sentences of several incarcerated individuals and ordered the Department of Corrections to release those individuals "at the nearest practical time."

37.      On March 23, 2020, Secretary Kunkel issued an Emergency Order pursuant to the authority granted to her under the "Public Health Act, NMSA 1978, Sections 24-1-1 to -40, the Public Health Emergency Response Act, NMSA 1978, Sections 12-10A-1 to -10, the Department of Health Act, NMSA 1978, Sections 9-7-1 to -18, and inherent constitutional police powers of the New Mexico state government." Public Health Emergency Order Closing All Businesses and Non-Profit Entities Except for those Deemed Essential and Providing Additional Restrictions on Mass Gatherings Due to COVID-19 ("Public Health Emergency Order").[5]

38.      The closure of licensed firearms dealers under Executive Order 2020-004 and the Public Health Emergency Order exceeds the scope of power authorized under New Mexico Law and violates the Second and Fourteenth Amendments to the United States Constitution.

---

[4] The Executive Order is Available at https://www.governor.state.nm.us/wp-content/uploads/2020/04/EO_2020_021.pdf (last visited April 9, 2020).

[5] The state of emergency order is available at https://www.governor.state.nm.us/wp-content/uploads/2020/03/COVID-19-DOH-Order-fv.pdf (last visited April 9, 2020).

39.    Notably, on March 28, 2020, the Department of Homeland Security, Cyber-Infrastructure Division ("CISA"), issued an updated "ADVISORY MEMORANDUM ON IDENTIFICATION OF ESSENTIAL CRITICAL INFRASTRUCTURE WORKERS DURING COVID-19 RESPONSE," under its Web page for "Guidance on the Essential Critical Infrastructure Workforce" during the COVID-19 pandemic.[6] While the CISA's guidance is advisory in nature, its findings and conclusions are inherently entitled to great weight in this context, particularly since they were "developed, in collaboration with other federal agencies, State and local governments, and the private sector" for the specific purpose of "help[ing] State, local, tribal and territorial officials as they work to protect their communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security." To that very end, CISA specifically determined that "[w]orkers supporting the operation of firearm or ammunition product manufacturers, *retailers*, importers, distributors, and shooting ranges" fall squarely within the "critical infrastructure workforce." (emphasis added).

---

[6] Guidance on the Essential Critical Infrastructure Workforce, https://www.cisa.gov/sites/default/files/publications/CISA_Guidance_on_the_Esse ntial_Critical_Infrastructure_Workforce_Version_2.0_Updated.pdf (last visited April 9, 2020).

*Statutory Background*

<u>New Mexico Emergency Powers Statutes</u>

40.     The New Mexico Hazard Emergency Management Act is codified at N.M. Stat. §§ 12-10-1 to 12-10-10. The New Mexico Hazard Emergency Management Act "confer[s] upon the governor and upon the governing bodies of the state all hazard emergency powers." N.M. Stat. § 12-10-2(b). These powers include granting the Governor authority to "issue, amend or rescind the necessary orders, rules and procedures to carry out the provisions of the All Hazard Emergency Management Act." N.M. Stat. § 12-10-4(B)(2). All political subdivisions of the state have a duty to enforce the orders issued under the New Mexico Hazard Emergency Management Act. N.M. Stat. § 12-10-10(a).

41.     The New Mexico Public Health Emergency Response Act is codified at N.M. Stat. §§ 12-10A-1 to 12-10A-19. The purposes of the New Mexico Public Health Emergency Response Act include "provid[ing] the state of New Mexico with the ability to manage public health emergencies in a manner that protects civil rights and the liberties of individual person." N.M. Stat. § 12-10A-1.

42.     The New Mexico Public Health Emergency Response Act gives the Governor the authority to declare a "state of public health emergency." N.M. Stat. § 12-10A-5(A). The Secretary of Health has certain enumerated powers when a state of public health emergency is declared. N.M. Stat. § 12-10A-6. The New Mexico

Public Health Emergency Response Act also provides due process protections before individuals can be quarantined. N.M. Stat. § 12-10A-7 to 11.

43.     The New Mexico Public Health Act is codified at N.M. Stat. §§ 24-1-1 to 24-1-40. The New Mexico Public Health Act gives the Department of Health the authority to "investigate, control and abate the causes of disease, especially epidemics, sources of mortality and other conditions of public health; establish, maintain and enforce isolation and quarantine; and close any public place and forbid gatherings of people when necessary for the protection of the public." N.M. Stat. § 24-1-3(C)-(E). Violations of any orders issued by the Department of Health under the New Mexico Public Health Act are misdemeanors, punishable by fines up to $100, up to six months in prison, or both. N.M. Stat. § 24-1-21.

State Law on Transferring Firearms and Training

44.     Under state law, it is unlawful for two people to transfer a firearm between themselves, without having had a licensed dealer conduct a federal instant criminal background check. N.M. Stat. § 30-7-7.1(A).

45.     Failure to obtain a federal instant criminal background check prior to transferring a firearm is a misdemeanor offense. N.M. Stat. § 30-7-7.1(G). A misdemeanor offense is punishable by a sentence of more than six months but less than one year of imprisonment. N.M. Stat § 30-1-6(B).

46.     The only exemptions from this requirement are transfers between federal firearms license ("FFL") holders, law enforcement agencies and officers, and immediate family members (as defined in section (C)(4)). N.M. Stat. § 30-7-7.1(B).

47.     New Mexico Law requires concealed handgun license applicants, *inter alia*, to "complete[] a firearms training course approved by the department for the category and the largest caliber of handgun that the applicant wants to be licensed to carry as a concealed handgun." N.M. Stat. § 29-19-4(A)(10).

48.     To renew a concealed handgun license, an applicant must, *inter alia*, complete a "four-hour refresher firearms training course approved by the department." N.M. Stat. § 29-19-4(F)(3).

49.     New Mexico Law requires that a licensee "complete a two-hour refreshers firearms training course two years after the issuance of an original or renewed license. N.M. Stat. § 29-19-4(H).

50.     The New Mexico Department of Public Safety publishes the minimum standards for approved firearms training courses, all of which must include "classroom instruction and range instruction and an actual demonstration by the applicant of his ability to safely use a handgun." N.M. Stat. § 29-19-7(A). The fifteen-hour minimum course includes classroom components and "live shooting of a handgun on a firing range." N.M. Stat. § 29-19-7(A)(1)–(A)(8).

<u>Orders at Issue</u>

51.     Secretary Kunkel's March 23, 2020, Public Health Emergency Order closed all businesses that the Secretary deemed non-essential under powers granted to her by the New Mexico law.

52.     The Public Health Emergency Order specifically required all non-essential businesses to reduce their in-person workforces by 100%. The Order further "requires the closure of physical … retail spaces" of non-essential businesses. "All public and private employers are required to comply with th[e] Order."

53.     Further, the Public Health Emergency Order states that "The New Mexico Department of Public Safety, the New Mexico Department of Homeland Security and Emergency Management, the Department of the Environment, and all other State departments and agencies are authorized to take all appropriate steps to ensure compliance with this Order."

54.     The Public Health Emergency Order does not list lawful firearms retailers or ranges as essential businesses, nor does the Order take into account any federally or other legally mandated duties required to be performed by firearms retailers or ranges.

Enforcement of the Orders

55.    Plaintiff Aragon is actively seeking to purchase a handgun in order to protect himself and his home—especially in light of the current pandemic.  Plaintiff Aragon is not a prohibited person.

56.    Plaintiff Aragon would lawfully purchase a handgun to use for self-defense or defense of his family and home but cannot due to Defendants' closure of firearms retailers and ranges and Defendants' enforcement, or potential enforcement, of Defendants' laws, policies, orders, practices, and customs challenged herein.

57.    Plaintiff Aragon would make use of one or more of the firearm shooting ranges that are available to him, but for the closure of those ranges due to Defendants' enforcement, or potential enforcement, of Defendants' laws, policies, orders, practices, and customs challenged herein.

58.    Plaintiff Fort is actively seeking to purchase a handgun in order to protect himself and his home—especially in light of the current pandemic.  Plaintiff Fort is not a prohibited person.

59.    Plaintiff Fort would lawfully purchase a handgun to use for self-defense or defense of his family and home but cannot due to Defendants' closure of firearms retailers and ranges and Defendants' enforcement, or potential enforcement, of Defendants' laws, policies, orders, practices, and customs challenged herein.

60.     Plaintiff Fort would make use of one or more of the firearm shooting ranges that are available to him, but for the closure of those ranges due to Defendants' enforcement, or potential enforcement, of Defendants' laws, policies, orders, practices, and customs challenged herein.

61.     Plaintiff Fort has a valid New Mexico concealed handgun license issued to him by the New Mexico Department of Public Safety.  Plaintiff Fort's concealed handgun license expires on April 12, 2020. For Plaintiff Fort to renew his license, he must complete a four-hour refresher course, pursuant to New Mexico law, that requires a live fire component. Plaintiff Fort would, but cannot, complete his four-hour refresher course due to Defendants' closure of firearms retailers and ranges and Defendants' enforcement, or potential enforcement, of Defendants' laws, policies, orders, practices, and customs challenged herein.

62.     Plaintiff Segura is actively seeking to purchase a handgun in order to protect himself and his home—especially in light of the current pandemic.  Plaintiff Segura is not a prohibited person.

63.     Plaintiff Segura would lawfully purchase a handgun to use for self-defense or defense of his family and home but cannot due to Defendants' closure of firearms retailers and ranges and Defendants' enforcement, or potential enforcement, of Defendants' laws, policies, orders, practices, and customs challenged herein.

64.    Plaintiff Segura would make use of one or more of the firearm shooting ranges that are available to him, but for the closure of those ranges due to Defendants' enforcement, or potential enforcement, of Defendants' laws, policies, orders, practices, and customs challenged herein.

65.    Plaintiff Segura is a licensed firearms training course instructor with the State of New Mexico and offers several different, state certified, firearms training courses to individuals in New Mexico. These courses, or their like, are required by New Mexico state law for a person to receive or keep valid their concealed handgun license.

66.    Due to Defendants' closure of firearm ranges, where Plaintiff Segura conducts both classroom and live shooting portions of the course, Plaintiff Segura can no longer offer his courses.

67.    Plaintiff Segura already cancelled a course being offered on March 29, 2020, due to Defendants' enforcement, or potential enforcement, of Defendants' laws, policies, orders, practices, and customs challenged herein.

68.    Plaintiff Segura will have to cancel an additional course scheduled for April 21–23, 2020, and April 26, 2020, due to Defendants' enforcement, or potential enforcement, of Defendants' laws, policies, orders, practices, and customs challenged herein.

69.     But for the Defendants' enforcement, threat of enforcement, and/or imminent ability to enforce its Orders prohibiting the operation of firearms ranges, Plaintiff Segura would continue to engage in the business of lawfully instructing and training individuals in the State of New Mexico in the safe operation of their firearms. Plaintiff Segura justifiably fear arrest, criminal prosecution, and/or civil liability for engaging in his business activity—activity that is constitutionally protected.

70.     On Tuesday, March 24, 2020, Plaintiff Rose's Guns, by and through its agent, contacted Governor Grisham's office by phone, and was informed by the party who answered that firearm retailers were not considered essential and must close.

71.     On Tuesday, March 24, 2020, Plaintiff Rose's Guns, by and through its agent, contacted New Mexico Attorney General Hector Balderas' office by phone, and was informed by the party who answered that firearm retailers were not considered essential and must close.

72.     On Tuesday, March 24, 2020, Plaintiff Rose's Guns, by and through its agent, contacted Moriarty Mayor Ted A. Hart by phone, and spoke with the Mayor, who was initially uncertain about the application of the Orders to firearm retailers. Upon further investigation Mayor Hart informed Plaintiff Rose's Guns that firearm retailers were not considered essential and must close.

73.     On Tuesday, March 24, 2020, Plaintiff Rose's Guns, by and through its agent, contacted New Mexico Senator James P. White and spoke with the Senator personally, who said that his information was that the Governor's Orders would not seem to cover firearms that were purchased and paid for prior to the Orders, and only had to be delivered to the lawful purchasers. Senator White suggested calls to the Mayor, State Police, and Governor's Office to confirm.

74.     On Tuesday, March 24, 2020, Plaintiff Rose's Guns, by and through its agent, contacted the New Mexico State Police by phone, and was informed by the party who answered that firearm retailers were not considered essential and must close. Plaintiff Rose's Guns informed the State Police of Senator White's interpretation of the remaining firearm transfers it had pending. The State Police representative did not take a position, but asked Plaintiff Rose's Guns that it inform the State Police each time it conducted such a transfer.

75.     Based on the official statements from the Governor's Office, the Attorney General's office, Mayor Hart, Senator White, and the State Police, Plaintiff Rose's Guns ceased all retail business operations the evening of Tuesday, March 24, 2020. Plaintiff Rose's Guns has not engaged in a business transaction since it ceased operation. It has not engaged in the transfer of a firearm, except for transfers that were pending prior to the Orders—and for each of those, Plaintiff Rose's Guns contacted and informed the State Police.

76.    But for the Defendants' enforcement, threat of enforcement, and/or imminent ability to enforce its Orders prohibiting the operation of firearms retailers, Plaintiff Rose's Guns would continue to engage in the business of lawfully purchasing, selling, and transferring firearms. Plaintiff Rose's Guns' agents justifiably fear arrest, criminal prosecution, and/or civil liability for engaging in its business activity—activity that is constitutionally protected.

77.    Plaintiff Southwest Gunsmith rents space in MAGS Indoor Range Shooting Range ("MAGS") in Moriarty, New Mexico. This space is integral to Plaintiff Southwest Gunsmith's operation, as it is its only retail space open to the public, where it conducts client and firearm intake, which include federally mandated transfers, that are necessary to its business operations.

78.    On March 29, 2020, Plaintiff Southwest Gunsmith was contacted by MAGS to inform Plaintiff Southwest Gunsmith that MAGS was visited by the New Mexico Department of Public Safety who informed MAGS that it must cease all operations or that it would be subject to a $60,000 fine. MAGS closed its doors at that point and informed Plaintiff Southwest Gunsmith.

79.    Plaintiff Southwest Gunsmith ceased all retail business operations the evening of Sunday, March 29, 2020. Plaintiff Southwest Gunsmith has not engaged in a business transaction nor a firearm transfer since it ceased operation.

80.     But for the Defendants' enforcement, threat of enforcement, and/or imminent ability to enforce its Orders prohibiting the operation of firearms retailers, Plaintiff Southwest Gunsmith would continue to engage in the business of lawfully transferring firearms. Plaintiff Southwest Gunsmith's agents justifiably fear arrest, criminal prosecution, and/or civil liability for engaging in its business activity— activity that is constitutionally protected.

81.     Governor Grisham's spokeswoman Nora Meyers Sackett specified in an email to the Santa Fe New Mexican that "[i]f a business is not listed as essential in the order, then they're not essential and they are ordered closed."[7]

82.     Officer Dusty Francisco, a New Mexico State Police spokesman, indicated to the Santa Fe New Mexican that the state police are informing gun store owners that they are supposed to be closed and that remaining open could result in civil or criminal penalties against the gun store owners.  *Id.*

## **BASIS FOR DECLARATORY AND INJUNCTIVE RELIEF**

83.     There is an actual and present controversy between the parties. Enforcement of the Executive Orders and the Public Health Emergency

---

[7] As reported by the Santa Fe New Mexican on March 28, 2020.  Michael Gerstein, *Confusion, anger on right as gun shops not considered essential*, SANTA FE NEW MEXICAN, March 28, 2020, https://www.santafenewmexican.com/news/coronavirus/confusion-anger-on-right-as-gun-shops-not-considered-essential/article_4e21e18a-6e01-11ea-9cab-fb2c463cb65f.html

Order prohibits Plaintiffs, Plaintiffs' members and customers, and other law-abiding individuals from, *inter alia*, keeping, bearing, acquiring, selling, transferring, possessing, training with, and/or transporting constitutionally protected arms. Plaintiffs seek a judicial declaration that the enforcement of the Executive Orders and the Public Health Emergency Order violate their constitutionally protected rights.

84. Plaintiffs are presently and continuously injured by Defendants' actual, imminent, or potential enforcement of Executive Order 2020-004 and the Public Health Emergency Order. Enforcement of those Orders violate Plaintiffs' rights as protected or guaranteed by the Second and Fourteenth Amendments by prohibiting the lawful acquisition, sale, transfer, transport, use, and/or ownership of constitutionally protected arms.

85. If not enjoined by this Court, Defendants will continue to, or will be presently able to, enforce the Executive Orders and the Public Health Emergency Order, thereby depriving Plaintiffs and similarly situated law-abiding Americans of their constitutionally protected and guaranteed rights.

86. Absent specific enforcement, Plaintiffs justifiably fear prosecution for engaging in the sale, purchase, use, and/or transfer of constitutionally protected arms due to the language of the Executive Orders and the Public Health Emergency Order,

as well as the statements of Governor Grisham's spokeswoman Ms. Sackett and Officer Francisco.

87.     Plaintiffs have no plain, speedy, and adequate remedy at law. Except for the economic damages to Retailer Plaintiffs and Plaintiff Segura's business operations, damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity.

## CLAIMS FOR RELIEF

### COUNT I
### DEPRIVATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983
### (Right to Keep and Bear Arms)

88.     Plaintiffs incorporate the preceding paragraphs by reference as if fully set forth herein.

89.     The Executive Orders and the Public Health Emergency Order have the force of law.

90.     Defendants' orders, directives, policies, practices, customs, and enforcement actions (or Defendants' threat of/present ability to enforce), prohibit law-abiding individuals from purchasing firearms and ammunition, and training with those firearms, for the purpose of protecting themselves, their families, others, and/or their property (or for any other lawful purpose). Independently and collectively, these stand as a bar on firearms acquisition, ownership, and proficiency

training at shooting ranges, and thus amount to a categorical ban on and infringement of the right to keep and bear arms and the privileges or immunities of citizenship.

91.    Plaintiffs, Plaintiffs' Members and customers, and those similarly situated to them, seek to exercise their right to keep and bear arms for defense of themselves, their families, and their property, especially in times of crisis such as this.

92.    As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and liabilities of many similarly-situated New Mexico residents and visitors who knowingly or unknowingly are subject to the New Mexico statutes, regulations, policies, practices, and customs in question.

93.    The relief sought in this action is declaratory and injunctive in nature, and the action involves matters of substantial public interest. Considerations of necessity, convenience, and justice justify relief to individual, retailer, and institutional Plaintiffs in a representative capacity. Further, to the extent it becomes necessary or appropriate, the institutional Plaintiffs are uniquely able to communicate with and provide notice to their thousands of New Mexico members and constituents who are or would be party to any identifiable class of individuals for whose benefit this Court may grant such relief.

94.     Governments do not have the power to utterly prohibit the keeping and bearing of arms, nor to close the channels of distribution by which people legally obtain firearms, nor to prohibit individuals from training with their lawfully possessed arms—even for brief periods of time.

95.     By forcing duly licensed, essential businesses to close or eliminate key services for the general public, government authorities are foreclosing the only lawful means to buy, sell, and transfer firearms available to typical, law-abiding individuals in New Mexico, as well as the only lawful means for individuals in New Mexico to obtain or renew a New Mexico concealed handgun permit.

96.     Because firearm transfers must be facilitated by a licensed dealer, Defendants' orders, directives, policies, practices, customs, and enforcement actions amount to a ban on purchasing and transferring firearms. As a result, law-abiding citizens who wish to comply with state laws—by submitting to, for example, background checks and in-person transfers—are foreclosed from acquiring firearms legally.

97.     Defendants' laws, orders, policies, practices, laws, enforcement actions, and omissions are untailored and irrational, and expressly allow some goods retailers to continue operating but prevent Retailer Plaintiffs and others similarly situated from operating and selling their goods to their customers and members of the public, including Individual Plaintiffs, Retailer Plaintiffs, and Institutional

Plaintiffs' members, thereby violating the rights of Plaintiffs, Plaintiffs' members and customers, and other similarly situated persons.

98.     Defendants' enforcement, threatened enforcement, and/or present ability to enforce the Executive Orders and the Public Health Emergency Order has forced licensed firearms dealers to shutter without regard to their manner of operation.

99.     Retailer Plaintiffs would continue to lawfully sell and/or transfer legal arms but for the enforcement, threatened enforcement, and/or present ability to enforce Executive Order 2020-004 and the Public Health Emergency Order.

100.   Individual Plaintiffs would lawfully purchase and/or transfer arms but for the enforcement, threatened enforcement, and/or present ability to enforce the Executive Orders and the Public Health Emergency Order.

101.   Plaintiff Segura would offer state certified firearms training courses but for the enforcement, threatened enforcement, and/or present ability to enforce the Executive Orders and the Public Health Emergency Order.

102.   Organizational Plaintiffs' members would continue to lawfully purchase, sell, and/or transfer legal arms but for enforcement, threatened enforcement, and/or present ability to enforce Executive Order 2020-004 and the Public Health Emergency Order.

103.   Defendants' laws, policies, practices, customs, and ongoing enforcement, threats of enforcement, and/or present ability to enforce their various orders and directives against the Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public, which prevent the Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public from exercising their rights, including the purchase, sale, transfer of, and/or training with constitutionally protected arms, ammunition, magazines, and appurtenances—are thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

104.   By their terms, these acts stand as a categorical bar on firearms ownership and an overbroad prohibition on safety training and therefore violate the Second and Fourteenth Amendments to the United States Constitution.

## **PRAYER FOR RELIEF**

Plaintiffs request the following relief from this Honorable Court:

1.     A declaratory judgement that the operation of firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges are essential and must be allowed to operate, and that Defendants' Orders, enforcement policies, practices, and customs that individually and/or collectively prohibit the operation of licensed firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges, and deny individuals the right and ability to travel to, access, and use them violate the Second and Fourteenth Amendments;

2.     A preliminary and permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing Defendants' Orders insofar as such enforcement policies, practices, and customs that individually and/or collectively prohibit the operation of licensed

firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges and deny individuals the right and ability to travel to, access, and use them violate the Second and Fourteenth Amendments;

3.      Such other and further relief as this Court deems just and equitable, including injunctive relief and/or any damages, nominal, actual, or otherwise, to which Plaintiffs are entitled, against all Defendants, as may be necessary to effectuate the Court's judgment; and

4.      Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

Respectfully submitted,

/s/
Patrick J. Rogers
PATRICK J. ROGERS, LLC
20 First Plaza NW, Suite 725
Albuquerque, NM  87102
(505) 938-3335
patrogers@patrogerslaw.com

Cody J. Wisniewski*
*Pro Hac Vice App. Forthcoming
MOUNTAIN STATES
  LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, CO  80227
(303) 292-2021
cody@mslegal.org

Adam Kraut, Esq.*
*Pro Hac Vice App. Forthcoming
FIREARMS POLICY COALITION, INC.
1215 K Street, 17th Floor
Sacramento, CA  95814
(916) 476-2342
akraut@fpclaw.org

34

Michael T. Jean*
*Pro Hac Vice App. Forthcoming
THE NATIONAL RIFLE
  ASSOCIATION OF AMERICA
11250 Waples Mill Road
Fairfax, VA  22030
(703) 267-1158
mjean@nrahq.org

Attorneys for Plaintiffs